UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

CHARLES M. ROBINSON
VS.
STANLEY TAYLOR
ET. AL.

C.A. No: 04-1202-GMS



## RESPONCE TO DEFENDANTS MOTION TO DISMISS

Comes Now, The Plaintiff, Charles M. Robinson hereby proceeding, Pro-Se. Moves This Honorable Court To Consider Plaintiffs Responce To Defendant Motion To Dismiss Before Passing Judgment:

### Ground One: (Failure To Exhaust Remedies)

1. On July 28, 2004, The Plaintiff Recieved A Write-Up From The Defendant Thurman Stanley, At Which, He Claimed Several Allegations. One Of The Alleged Allegations Was That The Plaintiff (Which Was An Inmate Grievance Rep) Had Demanded A Meeting With The Other Grievance Reps. See Exhibit "A".

2. Because of the false allegations, on July 29, 2004, the Plaintiff was called out of the main law library by the Defendant Cpl. L. M. Merson (which is the Inmate Grievance Chair-Person) and taken across the hall to an empty room, and informed that he was fired as an Inmate Grievance Rep.

3. The Plaintiff tried to explain to the Defendant Cpl. L. M. Merson what was going on and was cut off and then said "I Do Not Care" and "Do you actually think me or anyone else is going to let something happen to one of our own". As she started to walk out, she said "Your grievances wont make it no where, and we'll make sore of that" And as of today, none of my grievances which is over 50 have been processed.

4. Defendant, Cpl. L. M. Merson, is the Inmate Grievance Chair-Person, and is the only one who had access to the grievance boxes and grievances. The threats made by the Defendant Cpl. L. M. Merson about her intensions and the intensions of her fellow co-workers against the Plaintiff and his grievances, clearly made the grievance process de facto. Un-Available. "Because of their failure to process any of the Plaintiff's grievances". See Liggins v. Barnett, No. 04-CC-CV-90080, 2001 WL 737551, at *15 (S.D. Iowa May 15, 2001)

In LIGGINS, "The Court excused the Plaintiff from the exhaustion requirement because the guards retaliatory acts rose above mere threats - The guards physically prevented the grievances from being filed".

5. I arrived in the building on or about the 16th, day of February 2004, until November 2nd of 2004. During that time I filed over 50 grievances on the actions of defendant C/O: Thurman Stanley, which can be verified by atleast 20 witnesses. And according to the 4.4 DOC Procedural Manual, which the defendants provided as evidence, it states:

> "The Maxium Period Between Initial Grievance Receipt and Final Appeal Responce <u>Shall</u> <u>Not</u> Exceed <u>180</u> Calendar Days" See Exhibit B(v)(7).

If the Court counts the start time of the grievances from February of 2004, to August of 2004, when the Plaintiff filed the complaint they will clearly see that the <u>180</u> Calendar Days had been exceeded.

6. The defendants also state in their motion that "The State of Delaware Department of Corrections has established an Inmate Grievance Procedure where-by:"

"EVERY INMATE WILL BE PROVIDED A TIMELY EFFECTIVE MEANS OF HAVING ISSUES BROUGHT TO THE ATTENTION OF THOSE WHO CAN OFFER ADMINISTRATIVE REMEDIES BEFORE COURT PETITIONS CAN BE FILED". SEE EXHIBIT "B(II)".

AND BECAUSE OF THE ACTIONS OF THE DEFENDANT CPL. L. M. MERSON, I WAS NOT PROVIDED THE ABOVE FOR THE REASONS PREVIOUSLY STATED.

GROUND TWO: (ELEVENTH AMENDMENT IMMUNITY)

7. THE DEFENDANTS CLAIM THAT THEY ARE INTITLED TO IMMUNITY UNDER THE ELEVENTH AMENDMENT FOR THE REASONS OF "THE PLAINTIFF IS NOT ALLOWED TO SEEK A 42 U.S.C. § 1983 CIVIL ACTION AGAINST STATE EMPLOYEES ACTING IN THEIR OFFICIAL CAPACITY."

8. AS THE COURT CAN CLEARLY SEE IN THE PLAINTIFFS COMPLAINT, HE NEVER STATED IN WHICH CAPACITY HE WAS IN FACT SEEKING ACTION UNDER WHICH MEANS THE DEFENDANTS HAVE TAKEN IT UPON THEIRSELVES TO MAKE A GUESS.

9. IN FACT THE PLAINTIFF IS SEEKING TO SUE THE DEFENDANTS IN THEIR "PERSONAL CAPACITIES" WHICH IN THAT CAPACITY CAN RECOVER DAMAGES UNDER 42 U.S.C. § 1983 SEE EX PARTE YOUNG., 209 U.S. 123; HAFER V. MELO., 502 U.S. 21 (1991); MELO V. HAFER 912 F.2d 628, 636 (3RD CIR).

GROUND THREE: (NO PERSONAL INVOLVEMENT) (NO SUPERVISORY LIAB)

10. THE DEFENDANTS ARE CLAIMING THAT NO ONE, BUT C/O. THURMAN STANLEY HAD ANY PERSONAL INVOLVEMENT IN THE PRESENT ACTION BEFORE YOUR HONORABLE COURT.

11. I PERSONALLY INFORMED EACH DEFENDANT BY SEVERAL LETTERS ALMOST ON A DAILY BASIS ABOUT THE ACTIONS OF DEFENDANT(S) THURMAN STANLEY AND CPL. L.M. MERSON. AND OVER A 9 MONTH PERIOD, THEY FAILED TO DO ANYTHING TO STOP THESE ACTIONS. SEE: FARMER V. BRENNAN, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed 2d. 811 (1994) WHICH STATES: "IF AN OFFICIAL(S) DO NOT RESPOND AFTER BEING INFORMED OF SUCH RISK THEY CAN BE HELD LIABLE". SEE: BLACK V. STEPHENS, 662 F.2d 181 (3RD CIR) WHICH STATES: "OFFICIALS WHO GIVE ORDERS MAY BE LIABLE EVEN IF THEY ARE NOT DIRECTLY INVOLVED IN ENFORCING THEM AGAINST YOU". SEE ALSO: MERIWETHER V. COUGHLIN, 879 F.2d 1037 (2ND CIR) WHICH STATES: "OFFICIALS MAY ALSO BE HELD LIABLE FOR FAILURE TO TAKE ACTION TO PREVENT PREDICTABLE VIOLATIONS OF RIGHTS WITH-IN THEIR AREAS OF RESPONSIBILITY."

GROUND FOUR (THURMAN STANLEY'S QUALIFIED IMMUNITY)

12. THE DEFENDANTS ARE CLAIMING THAT C/O. THURMAN STANLEY IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE "HE ACTED IN GOOD FAITH, WITHOUT GROSS OR WANTON

NEGLIGENCE, IN THE PERFORMANCE OF HIS DISCRETIONARY DUTIES." WHICH IS FALSE.

13. IF THE COURT LOOKS AT THE PLAINTIFF'S COMPLAINT UNDER "STATEMENT OF FACTS" IT WILL CLEARLY SHOW THE COURT THAT THE DEFENDANT WAS NOT IN FACT "ACTING IN GOOD FAITH, WITHOUT GROSS OR WANTON NEGLIENCE, IN THE PERFORMANCE OF HIS DISCRETIONARY DUTIES". SEE: TRUMP HOTELS & CASINO RESORTS INC. V. MIRAGE RESORTS INC., 140 F.3d 478, 483, (3RD CIR 1998) WHICH STATES: "THE COURT MUST ACCEPT AS TRUE ALL FACTUAL ALLEGATIONS CONTAINED IN THE PLAINTIFFS COMPLAINT, AS WELL AS ALL REASONABLE INFERENCES THAT MAY BE DRAWN FROM THOSE ALLEGATIONS AND VIEW THEM, IN LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY."

WHEREFORE, BASED ON THE FOREGOING REASONS, THE PLAINTIFF RESPECTFULLY REQUEST YOUR HONORABLE COURT TO DENY THE DEFENDANTS MOTION TO DISMISS AND PROCEED WITH TRIAL.

RESPECTFULLY SUBMITTED

*[signature]*

CHARLES M. ROBINSON

MARCH 16, 2005
DATED

| Disciplinary# | | |
|---|---|---|
| 1011511 | Delaware Correctional Center<br>Smyrna Landing Road<br>SMYRNA DE, 19977<br>Phone No. 302-653-9261 | Date: 07/28/2004 |

# DISCIPLINARY REPORT

**Disciplinary Type:** Summary  **Housing Unit:** Bldg D-EAST  **IR#:** 1014135

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00342781 | Robinson, Charles M J | DCC | Bldg.D East CO Office | 07/28/2004 | 21:15 |

**Violations:** 2.01/200.105 Abuse of Privileges, 2.06/200.108 Failing to Obey an Order, 2.11/200.102 Off Limits

**Witnesses:** 1. N/A   2. N/A   3. N/A

### Description of Alleged Violation(s)

On The Above Date And Time, While Conducting Medication Call, I ( C/O T. Stanley ) Wittnessed I/M Robinson Attempt To Use The I/M Telephone 6 Times. I/M Robinson Was Initially Scheduled For A 1900 Phone Call. I/M Robinson Was Unable To Get Through When He Tried The First Time At Approx. 1840 And Requested That He Be Allowed To Try Again Later. This Request Was Granted And I/M Robinson Was Allowed To Try Several More Times. After I/M Robinson Was Given His Meds He Again Tried Several Times On Different Phones And Kept Hanging-Up. I Had Given I/M Robinson Enough Chances To Make His Call. When At Last I Ordered Him To Return To His Tier He Became Argumentative And Stated " Give Me A Grievance Form". I Told I/M Robinson To Take As Many As He Needed And Return To His Tier. I/M Robinson Asked For A Meeting With All The Grievance Reps And I Told Him "No. It Can Wait Until Tomorrow. He Then Requested A Lt To Come Talk To Him. I Notified Lt Simon And We Decided That I/M Robinson Would Be Seen By Lt Simon " If And When He Came Into The Area " As This Was Not A Serious Problem. I/M Is Being Written-Up For Abusing Privileges, Off Limits And Failing To Obey.

**Reporting Officer:** Stanley, Thurman J (Correctional Officer)

### Immediate Action Taken

**Immediate action taken by:** Stanley, Thurman J -Correctional Officer

I/M Placed On 24 Loap

### Offender Disposition Details

**Disposition:** N/A   **Date:** N/A   **Time:** N/A   **Cell secured?** No
**Reason:** N/A
**Disposition Of Evidence:** None

### Approval Information

**Approved:** ☐   **Disapproved:** ☐   **Approved By:** _ ()
**Comments:** N/A

### Shift Supervisor Details

**Date Received:**   **Time:**   **Received From:** _

**Shift Supervisor Determination:**

[ ] Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[ ] Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing

_____ , ()

I have received a copy of this notice on **DATE:**_____ **TIME:** _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

**Preliminary Hearing**
**Officer:** _____   **Offender:** _____
                                          Robinson, Charles M J

Ext. "A"   Page 1 of 1

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1 OF 7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: | |
| PROCEDURE MANUAL | 36 | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: *[signature] Paul W. Howard* | | |
| EFFECTIVE DATE: *Revised 5/15/98* | | |

I. AUTHORITY: DOC Policy 4.4

II. PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system. Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed. NOTE: Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III. APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP: all inmates under BOP custody or supervision.

IV. DEFINITIONS:

A. Bureau Grievance Officer (BGO): A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B. Emergency Grievance: An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C. Grievance: A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

EXT. "B"

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 2 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

D. Inmate Grievance Chair (IGC): An institutional employee designated to handle inmate grievances.

E. Inmate Grievance Procedure (IGP): The formal process provided to inmates to resolve disputes.

F. Outside Reviewer: An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H. Resident Grievance Committee (RGC): A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I. Reprisal: Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J. Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

   Health Services Administrator
   Director of Nursing
   Charge Nurse
   Chief Medical Officer
   Medical Records Clerk
   Mental Health Counselor
   Chief Dental Officer
   Dental Assistant

V. PROCEDURE:

1. Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2. All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP. Inmate complaints regarding policies and conditions must be within DOC jurisdiction. This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally. NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

### IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 6 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

recommendation. Decisions by the Bureau Chief of Prisons are final and not open to grievant interpretation. The Bureau Chief of Prisons will return his final decision and the grievance file to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by the Warden/Warden's Designee. A copy of the grievance shall be sent to the IGC upon receipt by the Warden/Warden's Designee. And the Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will be decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance does not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

**Attachments**

# Certificate of Service

I, CHARLES M. ROBINSON, hereby certify that I have served a true and correct cop(ies) of the attached: RESPONCE TO DEFENDANTS MOTION TO DISMISS upon the following parties/person (s):

TO: DEPUTY ATTORNEY GENERAL
OPHELIA M. WATERS
820 N. FRENCH ST.
WILMINGTON, DE, 19801

TO: _____

TO: _____

TO: _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this 29 day of MARCH , 2005